## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

KIMBERLY BRIARD,

                                                Case No.:

        Plaintiff,

        vs.

CAPITAL ACCOUNTS, LLC.,
TRANSUNION LLC, EXPERIAN
INFORMATION SOLUTIONS, INC. and
EQUIFAX INFORMATION SERVICES, LLC,

        Defendants.

_____

## COMPLAINT
## JURY DEMAND

1.      Plaintiff, KIMBERLY BRIARD ("Plaintiff") by and through the undersigned counsel hereby brings this action against Defendant, CAPITAL ACCOUNTS, LLC, for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. and violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

2.      Plaintiff's additional claims for violations of the FCRA are brought against TRANSUNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and EQUIFAX INFORMATION SERVICES, LLC.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.      Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Palm Beach County, Florida.

**PARTIES**

5.      Plaintiff is a natural person who, at all times relevant to this action, is and was a resident of Palm Beach County, Florida.

6.      Plaintiff, who, as more fully described herein, is a consumer within the meaning of 15 U.S.C. § 1692a (3) and 15 U.S.C. §1681a(c).

7.      Defendant, CAPITAL ACCOUNTS, LLC (hereinafter "Capital") is a Tennessee limited liability company conducting business in the state of Florida with a registered agent in this state at 17888 67th Court North, Loxahatchee, FL 33470.

8.      Capital uses the mail and telephone in a business the principal purpose of which is the collection of debts.

9.      Capital is a "debt collector" within the meaning of 15 U.S.C. § 1692a (6).

10.     At all times material hereto, Capital regularly collects or attempts to collect debts for other parties and is a "debt collector" as defined under 15 U.S.C. 1692a(6).

11.     Capital uses instrumentalities of interstate commerce for the purpose of furnishing information to consumer reporting agencies.

12.     Capital is a "person" as defined by 15 U.S.C. §1681a(b).

13.     Defendant, TRANSUNION LLC ("TransUnion") is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. TransUnion is authorized to do business in and regularly conducts business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

14.     Defendant, EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter

"Experian") is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

15.     Defendant, EQUIFAX INFORMATION SERVICES, LLC (hereinafter "Equifax") is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

16.     TransUnion, Experian, and Equifax shall be collectively referred to as "The Bureaus."

## APPLICABLE LAW

### The Fair Debt Collection Practices Act (FDCPA)

17.     The FDCPA provides, in relevant part: A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (2) The false representation of -- (A) the character, amount, or legal status of any debt … 15 U.S.C. § 1692e.

18.     A consumer has a right under the FDCPA to receive information from a debt collector that is not "false, deceptive, or misleading." *Pralle v. Cooling & Winter, LLC*, No. 2: 16-cv-865-FtM-99CM (M.D. Fla. May 2, 2017).

19.     The FDCPA defines the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3) (emphasis added).

20.     The FDCPA defines the term "debt" as "any obligation or alleged obligation of

a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added).

21.     The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due <u>or asserted to be owed or due another</u>." 15 U.S.C. § 1692a(6) (emphasis added).

22.     The FDCPA is essentially a strict liability statute and, therefore, does not require a showing of intentional conduct on the part of a debt collector. *See Rivera v. Amalgamated Debt Collection Services*, 462 F. Supp. 2d 1223 (S.D. Fla. 2006).

23.     For the purposes of the claims brought in this action, the applicable standard under the FDCPA in the Eleventh Circuit is "the least sophisticated" consumer test. *See Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the test enunciated in Exposition Press Inc. v. *FTC*, 295 F.2d 869 (2d Cir. 1961)).

24.     The principles underlying the FDCPA must be implemented for "the public— that vast multitude which includes the ignorant, the unthinking and the credulous." *Jeter*, 760 F.2d at 1172-73 (internal citations omitted).   The "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  Id. at 1173 (internal citations omitted).

25.     Within five days after the initial communication with a consumer in connection with the collection of any debt the FDCPA requires a debt collector to send the consumer a written notice containing specific information.[1]

26.     The FDCPA is essentially a strict liability statute and, therefore, does not require a showing of intentional conduct on the part of a debt collector. *See* Rivera, 462 F. Supp. 2d 1223.

### **Medical Debt and The Fair Credit Reporting Act (FCRA)**

27.     On May 20, 2015, Ohio Attorney General Mike DeWine and thirty (30) other state attorneys general announced a national settlement ("The Settlement") with The Bureaus. *Attorney General DeWine Announces Major National Settlement with Credit Reporting Agencies*, Ohio Att'y Gen. (May 20, 2015), https://www.ohioattorneygeneral.gov/Media/News-Releases/May-2015/Attorney-General-DeWine-Announces-Major-National-S , last visited November 5, 2019.

28.     The Settlement addressed a number of issues including Medical Collections reporting as follows

> To allow appropriate time for insurance remediation and clarity on what a consumer's individual payment obligation is for a medical account, the CRAs shall prevent the reporting and display of medical debt identified and furnished by Collection Furnishers when the date of the first delinquency is less than one hundred and eighty (180) days prior to the date that the account is reported to the CRAs.

---

[1] (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. *See* 15 U.S.C. §1692g(a).

*In the Matter of Equifax Information Services LLC (EAGO No. 453892), Experian Information Solutions, Inc., (EAGO No. 453891) and TransUnion LLC (EAGO No. 453890),* Assurance of Voluntary Compliance/Assurance of Voluntary Discontinuance, at Page 13, May 20, 2015.

29.     Florida was among the states who entered into The Settlement. *Id.* at pg. 1.

30.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.,* was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

31.     Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. §1681(a)(1).

32.      "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

33.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. 15 U.S.C. §1681s-2.

34.     "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See also Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1302 (11th Cir. 2016).

35.     As the 11th Circuit observed in *Hinkle* "§ 1681s–2(b) is designed not only to exclude false information from credit reports, but also to prevent the reporting of unverifiable information." *Id.* at 1304.

36.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. 15 U.S.C. §§ 1681o, 1691n.

37.     If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

## FACTUAL ALLEGATIONS COMMON TO FDCPA CLAIMS

38.     On August 17, 2018, Plaintiff suffered physical injuries which required immediate medical care at Wellington Regional Hospital ("Wellington") in Palm Beach County, FL.

39.     As a result, Plaintiff received required medical treatment at Wellington Regional between August 17, 2018 and August 25, 2018.

40.     At the time of her injury, throughout her stay at Wellington, and at all times relevant hereto Plaintiff was insured by United Healthcare Insurance Company. ("United").

41.     After being admitted to Wellington, Plaintiff was given several options of when to have recommended, but high-cost, medical procedures done to treat her injuries.

42.     The first option was to have the procedures done while she was at Wellington during her August 2018 stay and the second option was to wait for a later date in 2019.

43.     Before making any decision on when to have the recommended procedures done, Plaintiff called United to confirm the beginning and ending dates of her coverage from year to year.

44.     Plaintiff was told by United over the phone several times that her coverage period was from January 1, 2018 to January 1, 2019.

45.       Additionally, Plaintiff confirmed with United that once she reaches her out-of-pocket maximum or deductible United will cover 100% of her medical costs.

46.       In reliance on this information, Plaintiff chose to have the recommended medical procedures done while she was at Wellington in August of 2018.

47.       Between August 17, 2018 and August 25, 2018, Plaintiff reached her out-of-pocket maximum ("OOP").

48.       On October 1, 2018, Plaintiff received an Explanation of Benefits ("EOB") from United, which confirmed the date range the OOP was met. A redacted copy of the EOB is attached hereto as Exhibit "A."

49.       While Plaintiff was recovering at Wellington the attending physician recommended at home therapy to be provided by Matrix Home Health Care ("Matrix.")

50.       Based upon information and belief, Plaintiff's attending physician recommended Matrix in part because it is a medical provider in her network and approved by United.

51.       Between August 28, 2018 and September 18, 2018 Plaintiff received multiple therapy treatments from Matrix. A true and correct copy of the invoices sent to United and Plaintiff are attached hereto as part of Composite Exhibit "B."

52.       Each time Plaintiff received an invoice from Matrix she informed them that she did not owe anything since she had reached her OOP while at Wellington.

53.       On or about December 5, 2018 Plaintiff received a notice from Matrix demanding payment and advising her that she would be sent to collections if payment was not received within five business days. A true and correct copy of the notice from Matrix is attached hereto as part of Composite Exhibit "C."

54.       On or about December 31, 2018, Plaintiff's account with Matrix first appeared as a collection account on her credit reports with The Bureaus.

55.     On January 4, 2019, Plaintiff received a phone call from 305-713-1104; the call was from a representative from Capital in an attempt to collect a debt on behalf of Matrix.

56.     Capital demanded payment from Plaintiff in the amount of $720.

57.     Plaintiff disputed the debt based on her insurance coverage with United and her OOP being reached as described herein.

58.     The next written communication Plaintiff would receive from Capital was on or about September 9, 2019 and was titled "Satisfy-in-Full Offer." A true and correct copy of the "Satisfy-in-Full Offer" is attached hereto as part of Composite Exhibit "C."

59.     As further described below, Plaintiff would send written disputes to The Bureaus regarding the account reported by Capital. However, at a time better known to Capital, the account was no longer being reported as disputed by Plaintiff according to an October 15, 2019 Equifax report. *See infra,* paragraphs 70 – 72.

**FACTUAL ALLEGATIONS COMMON TO FCRA CLAIMS**

60.     Despite the existence of The Settlement, The Bureaus allowed Plaintiff's account with Matrix to be reported as a collection item on her credit file less than 180 days prior to the date of first delinquency.

61.     Plaintiff's June 24, 2019 TransUnion report registered multiple inquiries listed as either regular, promotional, or account review viewed by multiple entities. The relevant portions of Plaintiff's June 24, 2019 TransUnion report are attached hereto as part of Composite Exhibit "D."

62.     Additionally, Plaintiff's June 19, 2019, Experian report registered multiple inquiries for various purposes and were viewed by multiple entities.  The relevant portions of Plaintiff's June 19, 2019, Experian report are attached hereto as part of Composite Exhibit "D."

63.     Moreover, Plaintiff's April 7, 2019 Equifax report also registered multiple inquiries for various purposes and were viewed by multiple entities.  The relevant portions of Plaintiff's April 7, 2019, Equifax report are attached hereto as part of Composite Exhibit "D."

64.     On or about July 30, 2019, Plaintiff sent written disputes to The Bureaus to address the reporting of the Capital account at issue. A true and correct copy of the Initial Disputes are attached hereto as Composite Exhibit "E."

65.     Within the Initial Disputes Plaintiff provided the EOB from United regarding the date her OOP maximum was reached and additional documentation showing her therapy treatment with Matrix came after her OOP was reached. *See* Composite Exhibit "E."

66.     Additionally, Plaintiff requested that if the account reported by Capital remains on her reports as a negative item after the reinvestigation, then the following statement be added to her reports: "I have health insurance with United and reached my out-of-pocket maximum ("OOP") on August 25, 2018. Once I reach my OOP maximum during my policy period my insurance covers 100% of the costs. Matrix Home Health Care assigned my bill to collections even though I reached my OOP before they provided services to me." *See* Composite Exhibit "E."

67.     On or about August 28, 2019, TransUnion sent its reinvestigation results to Plaintiff which showed the account reported by Capital remained and was verified as accurate. A true and correct copy of TransUnion's reinvestigation results are attached hereto as Composite Exhibit "F."

68.     TransUnion's reinvestigation results failed to mention Plaintiff's request for a consumer statement being added to her file. As such, Plaintiff purchased Post Reinvestigation Reports on October 15, 2019 to see if the consumer statement appeared, but there was none. A true and correct copy of the Post Reinvestigation Report from TransUnion is attached hereto as part of Composite Exhibit "G."

69.     On or about September 4, 2019, Experian sent its reinvestigation results to Plaintiff which showed the account reported by Capital remained and was verified as accurate. A true and correct copy of Experian's reinvestigation results are attached hereto as Composite Exhibit "F."

70.     Experian's reinvestigation results failed to mention Plaintiff's request for a consumer statement being added to her file. As such, Plaintiff purchased additional reports on October 15, 2019 ("Post Reinvestigation Reports"), to see if the consumer statement appeared, but there was none. A true and correct copy of the Post Reinvestigation Report from Experian is attached hereto as part of Composite Exhibit "G."

71.     As of the filing of this Complaint, Equifax has yet to send Plaintiff the required reinvestigation results of the account reported by Capital. However, Plaintiff purchased Post Reinvestigation Reports on October 15, 2019. A true and correct copy of the Post Reinvestigation Report from Equifax is attached hereto as part of Composite Exhibit "G."

72.     The Post Reinvestigation Report from Equifax shows the account reported by Capital without any consumer statement regarding Plaintiff's OOP maximum being reached. *See* Composite Exhibit "G."

73.     Additionally, the Post Reinvestigation Report shows that Capital failed to note the account was still in dispute.

74.     Subsequently, two inquiries were logged onto Plaintiff's Equifax report:

   **a.** The first on September 22, 2019 by "JPMCB – CARD SERVICE"; and

   **b.** The second on October 2, 2019 by "COMENITYCAPITAL/DVDS."

75.     Both "JPMCB – CARD SERVICE" and "COMENITYCAPITAL/DVDS" reviewed copies of Plaintiff's Equifax report on the respective dates, which failed to note the account reported by Capital was in dispute.

## COUNT I – FDCPA VIOLATION, 15 U.S.C. §1692g(a)
## (AGAINST CAPITAL)

76.     Plaintiff incorporates by reference the allegations in paragraphs 1, 3 through 12, 17 through 59 as if fully set forth herein.

77.     At all times relevant, Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

78.     At all times relevant, Plaintiff was allegedly obligated to pay a debt and is therefore a "consumer" within the meaning of 15 U.S.C. § 1692a (3).

79.     Defendant, through its agents, representatives, and/or employees acting within the scope of their authority violated 15 U.S.C. §1692g(a) by failing to provide Plaintiff with the required notice within five days of the initial communication, which was January 4, 2019.

80.     The subsequent "Satisfy-in-Full Offer" dated September 9, 2019, described herein and attached as part of Composite Exhibit "C" does not contain the required information of §1692g(a).

81.     15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

82.     As a result of Defendant's violations, Plaintiff suffered damages, including but not limited to emotional distress in the form of mental pain and anguish, as well as time spent addressing Defendant's illegal collection practices.

        WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in her favor and against Capital for:

        a.      Actual and Statutory damages pursuant to 15 U.S.C. § 1692k;

      b.      Attorneys' fees, litigation expenses and costs of the instant suit; and

      c.      Such other or further relief as the Court deems proper.

**COUNT II – FDCPA VIOLATION, 15 U.S.C. §1692e(2)(A) and §1692e(10) AGAINST CAPITAL**

83.      Plaintiff incorporates by reference the allegations in paragraphs 1, 3 through 12, 17 through 59, and 76 through 82 as if fully set forth herein.

84.      At all times relevant, Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a (6).

85.      At all times relevant, Plaintiff was allegedly obligated to pay a debt and is therefore a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

86.      A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. *Johnson v. Midland Funding, LLC*, 823 F.3d 1334 (11th Cir. 2016).

87.      Capital through its agents, representatives, and/or employees acting within the scope of their authority, has violated the FDCPA in that Capital has sought to collect on a debt after Plaintiff had reached her OOP, and as such has made a false representation of the legal status of the debt, and is employing an unfair means to attempt to collect a debt.

88.      Capital's September 9, 2019 letter titled "Satisfy-in-Full Offer" was a false, deceptive, or misleading representation to collect a debt since Plaintiff had already reached her OOP and had informed Capital of such on the January 4, 2019 phone call described herein.

89.      Capital violated § 1692e(2)(A) of the FDCPA by falsely representing the character, amount, and legal status of Plaintiff's alleged consumer debt.

90.     Capital violated § 1692e(10) of the FDCPA by using false and deceptive means in an attempt to collect a debt from Plaintiff by reporting her account as a collection item to The Bureaus after less than 180 days had passed since the date of first delinquency.

91.     Capital's conduct is a violation of the FDCPA if it would be deceptive to the least-sophisticated consumer. *Id.*; *See also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (stating "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.")

92.     The FDCPA is a strict liability statute and accordingly Defendant's conduct need not have been intentional, Defendant's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

93.     Capital, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e(2)(a) and 15 U.S.C. §1692e(10).

94.     15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

95.     As a result of Defendant's aforementioned violations, Plaintiff suffered damages, including but not limited to emotional distress in the form of mental pain and anguish, as well as time spent addressing Defendant's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his favor and against Capital for:

a.     Actual Damages and Statutory damages pursuant to 15 U.S.C. § 1692k;

b.     Attorneys' fees, litigation expenses and costs of the instant suit; and

c.       Such other or further relief as the Court deems proper.

## COUNT III – FDCPA VIOLATION, 15 U.S.C. §1692e(8) AGAINST CAPITAL

96.       Plaintiff incorporates by reference the allegations in paragraphs 1, 3 through 12, 17 through 59, 70 through 72, and 76 through 95 as if fully set forth herein.

97.       At all times relevant, Capital is a "debt collector" within the meaning of 15 U.S.C. § 1692a (6).

98.       At all times relevant, Plaintiff was allegedly obligated to pay a debt and is therefore a "consumer" within the meaning of 15 U.S.C. § 1692a (3).

99.       "[P]ursuant to § 1692e (8), 'oral dispute of a debt precludes the debt collector from communicating the debtor's credit information to others without including the fact that the debt is in dispute.'..." *Baez v. Wagner & Hunt, P.A.*, 442 F.Supp.2d 1273 (S.D. Fla., 2006) (quoting *Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078, 1082 (9th Cir.2005).

100.       A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. *See Johnson v. Midland Funding, LLC*, 823 F.3d 1334.

101.       Capital failed to include the fact that Plaintiff disputed the debt when it reported to Equifax on or about October 15, 2019. *See* Composite Exhibit F.

102.       The FDCPA is a strict liability statute and accordingly Defendant's conduct need not have been intentional, Defendant's conduct violated the FDCPA regardless of its intentions. *See LeBlanc* at 1190.

103.       Capital, through its agents, representatives, and/or employees acting within the scope of their authority, violated 15 U.S.C. §1692e (8).

104.     15 U.S.C. § 1692k(a) provides that a debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for up to $1,000 in statutory damages, actual damages, the costs of the action, together with a reasonable attorney's fee as determined by the court.

105.     As a result of Defendant's aforementioned violations, Plaintiff suffered damages, including but not limited to emotional distress in the form of mental pain and anguish, as well as time spent addressing Defendant's illegal collection practices.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment in his favor and against Capital for:

a.     Actual Damages and Statutory damages pursuant to 15 U.S.C. § 1692k;

b.     Attorneys' fees, litigation expenses and costs of the instant suit; and

c.     Such other or further relief as the Court deems proper.

## COUNT IV - FCRA VIOLATIONS, 15 U.S.C. §1681s-2
## (AGAINST CAPITAL)

106.     Plaintiff incorporates by reference the allegations in paragraphs 1, 3 through 12, 17 through 59, 70 through 72, and 96 through 105 as if fully set forth herein.

107.     Capital is a furnisher under the FCRA because it provides information concerning consumers to credit reporting agencies.

108.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

109.     "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." *See* 15 U.S.C. §1681s-2(a)(3).

110.     Capital violated 15 U.S.C. §1681s-2(a)(3) by failing to notify Equifax that Plaintiff was disputing the accuracy or completeness of the account reported by Capital.

111.     Additionally, Capital violated 15 U.S.C. §1681s-2(b) by failing to accurately respond to Plaintiff's Initial Disputes forwarded by The Bureaus concerning the account Capital negatively reported.

112.     As a result of Capital's violations of the FCRA, Plaintiff has been damaged in the form of emotional distress in the form of mental pain and anguish, loss of credit and the opportunity to obtain credit, and the costs associated with her disputes.

113.     Capital's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

114.     In the alternative, Capital negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Capital:

c.   Adjudging that Capital violated 15 U.S.C. §1681s-2(b);

d.   Awarding Plaintiff actual damages;

e.   statutory damages; and

f.   attorneys' fees, litigation expenses and costs; and such other relief as the Court deems just and proper.

## COUNT V –FCRA VIOLATIONS, 15 U.S.C. §1681e(b) AND §1681i AGAINST TRANSUNION

115.     Plaintiff incorporates by reference the allegations in paragraphs 2 through 6, 13, 16, 27 through 37, 60, 61, and 64 through 68 as if fully set forth herein.

116.     At all times relevant hereto, TransUnion is and was a "consumer reporting agency"

as provided for under the FCRA.

117.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

118.     Prior to the Initial Dispute, TransUnion allowed the Capital account to appear on Plaintiff's credit reports well within the 180-day waiting period provided in The Settlement.

119.     As a result, certain entities who registered credit inquiries viewed the negative Capital account even though medical debt should not have appeared during that time under the terms of The Settlement.

120.     Therefore, TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

121.     Additionally, TransUnion received Plaintiff's Initial Dispute regarding the accuracy of the negative item reported by Capital on Plaintiff's credit report.

122.     Once again, TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

123.     Specifically, TransUnion failed to include the consumer statement Plaintiff had requested in her Initial Disputes.

124.     Additionally, TransUnion violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

125.     TransUnion unreasonably relied on information provided by Capital, when readily verifiable information that Plaintiff provided in the Initial Disputes placed TransUnion on notice that Capital's information was inaccurate.

126.     TransUnion's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

127.     In the alternative, TransUnion negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

128.     As a result of TransUnion's violation of the FCRA, Plaintiff suffered the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against TransUnion for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT VI – FCRA VIOLATIONS, 15 U.S.C. §1681e(b) AND §1681i AGAINST EXPERIAN

129.     Plaintiff incorporates by reference the allegations in paragraphs 2 through 6, 14, 16, 27 through 37, 60, 62, 64 through 66, 69, and 70 as if fully set forth herein.

130.     At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

131.     At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

132.     Prior to the Initial Dispute, Experian allowed the Capital account to appear on Plaintiff's credit reports well within the 180-day waiting period provided in The Settlement.

133.     As a result, certain entities who registered credit inquiries viewed the negative Capital account even though medical debt should not have appeared during that time under the terms of The Settlement.

134.     Therefore, Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

135.     Additionally, Experian received Plaintiff's Initial Dispute regarding the accuracy of the negative item reported by Capital on Plaintiff's credit report.

136.     Once again, Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

137.     Specifically, Experian failed to include the consumer statement Plaintiff had requested in her Initial Disputes.

138.     As such, Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

139.     Experian unreasonably relied on information provided by Capital, when readily verifiable information that Plaintiff provided in his disputes placed Experian on notice that Capital's information was inaccurate.

140.     Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

141.     In the alternative, Experian negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

142.     As a result of Experian's violation of the FCRA, Plaintiff suffered the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Experian for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT VII – FCRA VIOLATIONS, 15 U.S.C. §1681c(f) and 15 U.S.C. §1681e(b) AGAINST EQUIFAX

143.     Plaintiff incorporates by reference the allegations in paragraphs 2, 3 through 5, 15, 16, 27 through 37, 60, 63 through 66 and 71 through 75 as if fully set forth herein.

144.     At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

145.     At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

146.     15 U.S.C. §1681c(f) provides in relevant part that "[i]f a consumer reporting agency is notified pursuant to section 1681s-2(a)(3) of this title that information regarding a consumer who was furnished to the agency is disputed by the consumer, the agency shall indicate that fact in each consumer report that includes the disputed information."

147.     Plaintiff sent his Initial Dispute pursuant to §1681s-2(a)(3) directly to Capital and to Equifax.

148.     According to Plaintiff's Post Reinvestigation Report, "JPMCB – CARD SERVICE" and "COMENITYCAPITAL/DVDS" each viewed Plaintiff's Equifax report without a notation of the Capital account being disputed.

149.     As a result of Equifax's failure to note the Capital account was in dispute when "JPMCB – CARD SERVICE" and "COMENITYCAPITAL/DVDS" reviewed Plaintiff's Equifax report Equifax also violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable

procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

150.    As a result of Equifax's violations of §§1681c(f) and e(b) Plaintiff suffered the mental and emotional distress and reputational harm of inaccurate information being viewed by and disseminated to third parties such as "JPMCB – CARD SERVICE and COMENITY CAPITAL/DVDS" damage to his reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

151.    Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

152.    In the alternative, Equifax negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT VIII – FCRA VIOLATIONS, 15 U.S.C. §1681e(b) AND §1681i AGAINST EQUIFAX

153.    Plaintiff incorporates by reference the allegations in paragraphs 2, 3 through 6, 15, 16, 27 through 37, 60, 63 through 66, 71 through 75, and 143 through 152 as if fully set forth herein.

154.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

155.    At all times relevant hereto, Plaintiff is and was a "consumer" as provided for under the FCRA.

156.    Prior to the Initial Dispute, Equifax allowed the Capital account to appear on Plaintiff's credit reports well within the 180-day waiting period provided in The Settlement.

157.     The entities who registered these inquiries viewed the negative Capital account even though medical debt should not have appeared during that time under the terms of The Settlement.

158.     Therefore, Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

159.     Additionally, Equifax received Plaintiff's Initial Dispute regarding the accuracy of the negative item reported by Capital on Plaintiff's credit report.

160.     Once again, Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

161.     Specifically, Equifax failed to include the consumer statement Plaintiff had requested in her Initial Disputes.

162.     As such, Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

163.     Equifax unreasonably relied on information provided by Capital, when readily verifiable information that Plaintiff provided in his disputes placed Equifax on notice that Capital's information was inaccurate.

164.     Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

165.     In the alternative, Equifax negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

166.     As a result of Equifax's violation of the FCRA, Plaintiff suffered the loss of credit, loss of the ability to purchase and benefit from credit, mental and pain and anguish, damage to her reputation for creditworthiness, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief for Plaintiff and against Equifax for: actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## JURY DEMAND

167.     Plaintiff demands a trial by jury on all issues so triable

Respectfully submitted,

**SHARMIN & SHARMIN, P.A.**
***/s/ Kevin Rajabalee, Esq.***
Fla. Bar. No. 119948
kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Direct: 954- 667 – 3096
Fax: 561-202-9041
eiman@sharminlaw.com
*Attorneys for Plaintiff*